Argued and submitted February 17, affirmed June 21, petition for review denied November 7, 2000 (331 Or 283)

Gerald A. STOKES,
*Appellant,*

*v.*

Patti Ann LUNDEEN,
*Respondent.*

(16-97-06536; CA A104471)

7 P3d 586

George W. Kelly argued the cause and filed the briefs for appellant.

Joel A. DeVore argued the cause for respondent. With him on the brief was Luvaas, Cobb, Richards & Fraser, P.C.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

.

## HASELTON, J.

Plaintiff appeals from a judgment for defendant, following a jury trial, in a personal injury action arising from an auto collision. Plaintiff assigns error to the trial court's refusal to grant a directed verdict against defendant's affirmative defenses that plaintiff was negligent in causing the accident, including a defense that plaintiff was negligent *per se* in driving "more than [t]wenty miles per hour when passing school grounds [when] * * * [c]hildren are present." ORS 811.105(2)(c)(A) (1995). We conclude, *inter alia*, that defendant was a member of the class of persons meant to be protected by ORS 811.105(2)(c)(A) (1995), and affirm.

At about 4:30 on the afternoon of September 24, 1996, plaintiff and his daughter were traveling south on Bailey Hill Road, a two-lane highway in Lane County, with a general speed limit of 55 miles per hour. Bailey Hill Road runs north and south, and passes immediately east of Twin Oaks Elementary School. As plaintiff approached the school, he first passed a five-sided "school advance" sign with the silhouette of two children on it and then, closer to the school, passed a sign with the legend: "School—Speed 20 When Children Are Present." Plaintiff slowed to between 40 and 50 miles per hour.

As plaintiff's van approached the school from the north, defendant was approaching the school from the south to pick up her seven-year-old daughter from a Brownie meeting. Defendant slowed to turn into the driveway just south of the school. Because of a rise in the road, it is difficult to see oncoming traffic at that point. Defendant then turned in front of plaintiff's oncoming van,[1] and the vehicles collided in "t-bone" fashion. Both plaintiff and defendant were seriously injured.

When plaintiff drove through the school zone, immediately before the collision, "more than 10" boys were outside on a football field north of the school. That field is adjacent to

---

[1] There was conflicting testimony both as to plaintiff's speed and as to whether defendant signaled before turning. Given the jury's ultimate 51 percent/49 percent allocation of comparative fault between plaintiff and defendant, it is impossible to divine which aspects of the parties' accounts the jury accepted.

Bailey Hill Road and separated from the road by a cyclone fence. Another 23 children, who were in day-care, were on a playground visible from the road, adjacent to the northwest wing of the school. Three girls in the Brownie group were standing with the adult group leader, outside a cafeteria door on the southeast side of the school. One boy was walking with his father to the parking lot on the school's southwest corner. Finally, just opposite the collision site, on the east side of Bailey Hill Road, two children were playing on a pyramid play structure on their grandparents' property. Plaintiff testified that he did not see any of the children on the school property or the children on the pyramid.

In August 1997, plaintiff filed this action, alleging that defendant's negligence had caused the accident. Defendant answered, alleging as a first affirmative defense:

"At the time and place of the accident described in the plaintiff's complaint, plaintiff himself was careless and negligent in one or more of the following particulars:

"(a)  In operating his automobile at a speed that was greater than reasonable and prudent, having due regard to the existing traffic conditions;

"(b)  In traveling at a rate of speed greater than the posted speed of 20 mph in violation of ORS 811.105(1)(c);

"(c)  In failing to keep a proper lookout; and

"(d)  In failing to maintain proper control over his automobile."

At trial, plaintiff sought to present testimony from Art West, a Lane County Deputy Sheriff, that, under circumstances approximating those at the time of the accident, he would not issue a citation for violation of the "children are present" provision of ORS 811.105(2)(c)(A) (1995).[2] Defendant objected to West's proposed testimony because "whether

_____

[2] Plaintiff made an offer of proof that West would testify that

"under my scenario, at 4:30, if there aren't any children right out in front of the school, if there aren't kids coming and going from the school, if there are two grandkids at the Hartlauers' across the street on their property, if there's soccer going on after school hours in back or north of the school in back of the fence, that is not a 20 miles per hour zone at that time under those circumstances. That they would not issue citations for that."

he would issue a citation is irrelevant," *i.e.*, that such testimony would invade the court's province to "instruct the jury about what the law is." The court sustained that objection:

> "I'm not going to allow the witness to be called because that [testimony] would be more of a legal interpretation rather than a factual interpretation. I can see myself considering very seriously at the end of this case in defining whether children are present as when they are in a school building or behind a permanent barrier."

■ Plaintiff subsequently moved for a "directed verdict"[3] against specifications (a), (c), and (d) of defendant's comparative fault affirmative defense as being unsupported by any evidence. The court denied that motion. Plaintiff also moved for a "directed verdict" against specification (b), which alleged negligence *per se* for violation of ORS 811.105(2)(c)(A) (1995), on three grounds: (1) That statute, and particularly the phrase "children are present," was unconstitutionally vague; (2) defendant was not a member of the class of persons to be protected by that statute; and (3) there was no evidence that children were "present" within the meaning of the statute. The court rejected each of those arguments.

Thereafter, at plaintiff's request—and over defendant's objection—the court gave the following instruction concerning the meaning of "children are present":

> "In this case, I instruct you that the phrase 'children are present' means children who are in areas where their safety could reasonably be endangered by motor vehicles passing through the school zone."

---

[3] Defendant asserts that, while plaintiff's motion for a directed verdict referred with particularity to each of the challenged specifications, that motion was not the "proper vehicle" for disputing the sufficiency of the individual specifications. Rather, defendant asserts, the proper procedure would have been for plaintiff to request a "suitable peremptory instruction."

Defendant did not object in the trial court to the procedural propriety of plaintiff's motion for a "directed verdict." Moreover, although it is true that "[a] motion for a directed verdict is not the proper vehicle for asking the trial court to decide as a matter of law that the movant is entitled to prevail on less than all of the *elements* of a claim," *NW Pac. Indem. v. Junction City Water Dist.*, 296 Or 365, 372 n 1, 677 P2d 671 (1984) (emphasis added), we are unaware of any precedent or principle extending that rule to potentially dispositive *specifications* of a claim or defense. In all events, whether more properly styled as a non-ORCP 21 "motion to strike" or a "motion to withdraw," *see, e.g., Dickson v. Hollinger*, 257 Or 89, 93, 476 P2d 557 (1970), plaintiff's motion squarely raised the matters now disputed on appeal.

During deliberations, at the jury's request, the court repeated that instruction. The jury ultimately returned a special verdict, apportioning the parties' fault as 51 percent (plaintiff) and 49 percent (defendant).

On appeal, plaintiff raises three assignments of error. First, plaintiff asserts that the court erred in denying a directed verdict against defendant's negligence *per se* allegation under ORS 811.105(2)(c)(A) (1995). Second, the court erred in denying a directed verdict against defendant's other comparative fault specifications. Third, the court erred in excluding Deputy West's testimony that he would not have issued a citation under ORS 811.105(2)(c)(A) (1995). We reject each.

ORS 811.105(2)(c)(A) (1995) provides, in part:

"Any speed in excess of any of the following designated speeds is prima facie evidence of violation of the basic speed rule under ORS 811.100:

"* * * * *

"(c) Twenty miles per hour when passing school grounds or a school crosswalk * * * and;

"(A) Children are present."[4]

Plaintiff first argues, as he did to the trial court, that the central phrase "children are present" is unconstitutionally vague: "It could mean almost anything." That vagueness, plaintiff contends, impermissibly invites arbitrary and discriminatory enforcement.[5]

---

[4] In 1997, the legislature amended the Vehicle Code to include a definition of "children are present." Or Laws 1997, ch 438, § 2. The present version of ORS 811.105(2)(c)(A) includes an express cross-reference to that definition, which is codified at ORS 811.124:

"For purposes of provisions of ORS 811.105 and 811.123 dealing with permissible speeds when passing school grounds or a school cross-walk, children are present at any time and on any day when children are in a place where they are or can reasonably be expected to be visible to a person operating a motor vehicle that is passing a school ground or a school cross-walk."

[5] Plaintiff invokes a panoply of constitutional provisions, including the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, sections 20 and 21, Article III, section 1, and Article IV, section 1, of the Oregon Constitution.

■     Whatever the abstract merits of plaintiff's challenge to the former statutory scheme,[6] any defect—at least as to this plaintiff—was cured when the court gave plaintiff's requested instruction on the meaning of "children are present." *See* 168 Or App at 434 (quoting instruction). Plaintiff acknowledges, necessarily, that that instruction was not vague. Thus, there was no potential for arbitrary application in this case.

■     Plaintiff next contends that defendant cannot invoke negligence *per se* because she was not a member of the class meant to be protected under ORS 811.105(2)(c)(A) (1995) and because her injuries were not of the sort that that statute was meant to prevent. To establish comparative fault based on negligence *per se*, a defendant must show that (1) the plaintiff violated a statute; (2) the defendant was injured as a result of that violation; (3) the defendant was a "member of the class meant to be protected by the statute"; and (4) the injury that the defendant suffered "is of a type that the statute was enacted to prevent." *Ettinger v. Denny Chancler Equipment Co., Inc.*, 139 Or App 103, 107, 910 P2d 420, *rev den* 324 Or 394 (1996); *McAlpine v. Multnomah County*, 131 Or App 136, 144, 883 P2d 869 (1994), *rev den* 320 Or 507 (1995).

Plaintiff's argument, in its starkest terms, is that, because the statute explicitly refers to "children," it must be interpreted to protect only children:

"The statute is quite specific: It applies only when *children* are present. The target class—indeed the only class the statute contemplates—are children. Unless a child is injured, there is no negligence *per se*.

"The same reasoning applies to the type of harm the statute seeks to prevent. The contemplated harm is a collision between a passing vehicle and an inattentive child. It does not include a collision between vehicles, both driven by focused adults, and who may or may not have anything to

---

[6] We imply no view as to whether a vagueness challenge can ever be raised in a civil context, where an alleged violation of the Vehicle Code is the basis of a claim or defense of negligence *per se*. Cf. *Megdal v. Board of Dental Examiners*, 288 Or 293, 299, 605 P2d 273 (1980) (generally addressing application of "void for vagueness" doctrine under Article I, sections 20 and 21, of the Oregon Constitution).

do with the school." (Emphasis in original; footnote omitted.)

Defendant responds that plaintiff's characterization of the statute's scope and purpose is too restrictive in that it fails to acknowledge that ORS 811.105(2)(c)(A) (1995) is merely a particular circumstantial "variation on the basic speed rule found in the preceding statute, ORS 811.100." Thus, defendant reasons, just as the "basic rule" is intended to protect Oregon motorists and pedestrians generally, so too is ORS 811.105(2)(c)(A) (1995):

> "By slowing speeds near 'school grounds' or 'school crosswalks,' the statute recognizes that school zones are congested areas, like any other. They are areas where adults will cross more slowly with an eye on dawdling children. Along with children, crossing guards, parents, teachers, classified staff, and volunteer coaches will be exposed to the risk of speeding vehicles near school grounds. * * * It is a risk that is not limited to pedestrians, either. As congested areas, schools are the destinations for large school buses, small activity vans, teacher and staff vehicles, and scores of vehicles bringing children to class or after-school activities. Children and adults will be in those vehicles. All vehicle occupants, whether adults or children, are exposed to the same risk of injury when a vehicle speeds through a school zone. When one car stops to allow a child and parent to cross the road, the car's driver and passengers can all be injured by the speeding car that rear-ends them from behind. When a speeding car veers onto the grass to avoid a left-turning car, a teacher, coach, or parent may be the one injured as the adult jumps in the car's path to push the child away." (Footnote omitted.)

■ We agree with defendant. ORS 811.105(2)(c)(A) (1995), read in combination with ORS 811.100, confirms that the former merely describes circumstances bearing on the latter's application. ORS 811.100 reads, in part:

> "(1) A person commits the offense of violating the basic speed rule if the person drives a vehicle upon a highway at a speed greater than is reasonable and prudent, having due regard to all of the following:
>
> "(a) The traffic.
>
> "(b) The surface and width of the highway.

"(c)    The hazard at intersections.

"(d)    Weather.

"(e)    Visibility.

"(f)    Any other conditions then existing.

"(2)    The following apply to the offense described in this section:

"* * * * *

"(b)    Speeds that are prima facie evidence of violation of this section are established by ORS 811.105."[7]

ORS 811.105 (1995), read in its entirety, provides as follows:

"Any speed in excess of any of the following designated speeds is prima facie evidence of violation of the basic speed rule under ORS 811.100:

"(1)    Any speed posted by authority granted under ORS 810.180.

"(2)    If no speed is posted, any speed in excess of one of the following designated speeds is prima facie evidence of violation of the basic speed rule:

"(a)    Fifteen miles per hour when driving on an alley.

"(b)    Twenty miles per hour in a business district.

"(c)    Twenty miles per hour when passing school grounds or a school crosswalk if notice of the grounds or crosswalk is indicated plainly by traffic control devices conforming to the requirements established under ORS 810.200 and posted under authority granted by ORS 810.210 and:

"(A)    Children are present; or

"(B)    A flashing light used as a traffic control device and operated under ORS 811.106 indicates that children may be arriving at or leaving school.

"(d)    Twenty-five miles per hour in any public park or residence district not located within a city or within an

---

[7] Although ORS 811.100 was revised in part in 1997, the quoted portions were unchanged. In addition, the quoted portions did not materially change between 1983, when the original ORS 811.105 was also enacted, and 1995.

urban growth boundary that is in a county with a population greater than 100,000.

"(e)  Sixty-five miles per hour on any rural interstate highway.

"(f)  Fifty-five miles per hour in locations not otherwise described in this section."

A fundamental purpose of the Oregon Vehicle Code, including ORS 811.100 and ORS 811.105, is "[t]o provide maximum safety for all persons who travel or otherwise use the public highways of this state." ORS 801.020(11)(a). The basic speed rule pronounced in ORS 811.100 effectuates that purpose by prohibiting driving at speeds "greater than is reasonable and prudent" given the totality of conditions. ORS 811.100(2)(b) refers, in turn, to ORS 811.105 as determining that, in certain circumstances—*viz.*, in alleys, in business districts, in school zones when children are present, in public parks, and in certain residential districts—certain speeds are *prima facie* not "reasonable and prudent." *See* ORS 811.105(2). So viewed, and understood, "passing school grounds [when] * * * children are present" is merely a variant of the same circumstantial concern that underlies the particularized treatment of "business districts" and "residential districts": In each circumstance, reduced speed is categorically "reasonable and prudent" because of the heightened risk of sudden, unexpected hazards.

Thus, subsection (2)(c)(A) was no more intended to protect children exclusively than subsection (2)(b) protects only business people and their customers or subsection (2)(d) protects only residents of a neighborhood and their visitors. Rather, context demonstrates that the statutory scheme as a whole protects the class of persons who use Oregon's public roadways and persons placed at risk by motorists who travel at greater than "reasonable and prudent" speeds.[8] That construction not only comports with the breadth of the statutory purpose announced in ORS 801.020(11)(a), but also avoids the incongruity of extending the statute's protections to a child injured by a speeding driver—but not to an adult

---

[8] We have found no legislative history antedating the 1997 amendments discussing statutory purpose that refers specifically to subsection (2)(c).

teacher or crossing guard hit by the same driver. Consequently, defendant, as a user of the public roadway, was within the class of persons meant to be protected by the statute.

Plaintiff's alternative argument, that defendant's injury was not of the sort the statute was enacted to prevent, fails for similar, albeit not identical, reasons. The accident and injuries here occurred, in part, because of a hazard associated with school-related activities—a parent turning into the school to pick up a child. The basic speed rule's 20 mile per hour speed limit anticipates such risks. Here, there was evidence from which the jury could conclude that, but for plaintiff's unlawful speed, the collision either could have been avoided or, at least, its severity reduced. Consequently, defendant made a *prima facie* showing that her injuries were of the sort the statute was designed to prevent.

■ Plaintiff argues finally, with respect to negligence *per se*, that that specification should not have been submitted to the jury because there was no evidence that children were "present" within the meaning of the statute. As noted, plaintiff submitted an instruction defining "children are present," and the court gave that instruction: Children "are present" when they are "in areas where their safety could reasonably be endangered by motor vehicles passing through the school zone." Assuming without deciding the correctness of that definition endorsed by plaintiff, we conclude that defendant presented adequate evidence of "presence" under that definition. For example, the jury could reasonably have found that, notwithstanding the cyclone fence, the boys practicing football on the field north of the school could reasonably have been endangered by speeding vehicles on the adjacent roadway.[9] In sum, the court correctly rejected each of plaintiff's challenges to the negligence *per se* specifications.

■ Plaintiff's second assignment of error challenges the trial court's denial of his directed verdict motion against defendant's other three specifications of comparative fault. Without belaboring the record, the direct evidence and the

---

[9] One witness referred, without objection, to another accident in which a car "flipped [and] went up and over a fence." The witness did not specify the location of that accident.

circumstances of the accident amply supported those specifications.[10] *See generally Hess v. Larson*, 259 Or 282, 289, 486 P2d 533 (1971) ("The elements of speed, lookout and control are interrelated and, in most cases, it is proper if not necessary for the jury to consider them together; independent evidence of each element is not necessary.").

■ Finally, plaintiff assigns error to the exclusion of Deputy West's testimony. Before the trial court, plaintiff characterized the deputy as an "expert" and contended that "his opinions * * * as to what constitutes a violation of [ORS 811.105(2)(c)(A) (1995)] are extremely—not only relevant, but helpful to the jury to decide what the statute means." As noted above, 168 Or App at 433-34, the court excluded that testimony concluding that "it would be more of a legal interpretation than a factual interpretation." We agree. The proper construction of subsection (2)(c)(A) and, particularly, the meaning of the phrase "children are present" was a matter of law for the court to determine and to instruct the jury—as, indeed, it did. The court did not err. *See generally* Laird C. Kirkpatrick, *Oregon Evidence*, 418 (3d ed 1996) ("In general, questions of law are for the court and not a proper subject for expert testimony to the jury.").

Affirmed.

---

[10] For example, in a post-accident report, plaintiff acknowledged that he did not "see the accident coming"; that he was traveling 45 miles per hour and defendant's speed was "0"; and that he did not brake before impact. Plaintiff also acknowledged that, on other occasions when he had passed the school, he had seen parents picking up children from after-school activities and that, as he came over the "rise" approaching the school on the afternoon of the accident, he knew that "there might well be parents pulling in to pick up their kids or pulling out after having done that."