Argued and submitted January 31, affirmed September 19, 2007

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RICHARD BRIAN CASEY,
*Defendant-Appellant.*

Yamhill County Circuit Court
CR030474; A125350

168 P3d 315

Shawn Wiley, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne,

Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum,* Judges.

ARMSTRONG, J.

———

* Rosenblum, J., *vice* Brewer, C. J.

## ARMSTRONG, J.

Defendant appeals from a judgment of conviction after a bench trial for a violation of ORS 166.270(1), which prohibits a felon from possessing a firearm. He assigns error to the trial court's denial of his motion for a judgment of acquittal. We affirm.

In reviewing a motion for a judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether a rational trier of fact could find that the state had proved every element of the offense beyond a reasonable doubt. ORS 136.445; *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998).

On the evening of June 3, 2003, the Yamhill County Sheriff's Office received a complaint that defendant was trespassing on rural property. Defendant was in fact living in his brother-in-law's trailer on the property.[1] Two deputies, Bowdle and Shipley, drove out to the property to investigate the complaint. Defendant and three guests were leaving the trailer as the deputies approached the door to the trailer and asked for identification.[2]

As defendant stepped from the trailer, one guest, Kirk Mealue, told the deputies that he had left a loaded gun in a holster on the counter inside the door to the trailer. All four individuals stepped outside the trailer, and Deputy Shipley verified by sight that a gun was indeed on the counter. At trial, Mealue testified that he had placed his gun in its holster and tucked it between his pants and shirt before going to defendant's trailer. Defendant testified that the gun was not his and that he was unaware of its existence until he was leaving the trailer.

As the deputies were checking identification, they asked if anyone was a convicted felon, and defendant responded that he was. The deputies then told defendant

---

[1] Authorities later discovered that defendant had permission from the trustee of the property to stay there.

[2] The three guests had been in the trailer on the property for no more than 30 minutes before police arrived.

that they were responding to a call about a possible trespasser on the property, and defendant stated that he had the right to be there and had the documents to prove it. They allowed defendant to reenter the trailer to retrieve the documents.

The deputies then noticed something inside the trailer that appeared to be contraband and asked about it. Defendant told the deputies that it was a bowl of rocks and sand from a nearby creek, and he offered to bring it outside. The deputies again allowed defendant to reenter the trailer to retrieve the bowl of rocks.

At that point, the deputies said that the gun needed to be removed from the trailer, and defendant responded that he did not want the deputies to go into the trailer. Defendant asked Mealue, the owner of the gun, to retrieve it. Deputy Bowdle said that he did not want anyone other than a police officer to retrieve the gun from the trailer. He further explained that defendant could not retrieve the gun because he was a convicted felon. Deputy Bowdle then began walking toward the trailer door to retrieve the gun. Defendant repeated that he did not want the deputies to enter the trailer and that he would get the gun for them; he began walking toward the door.

Deputy Bowdle and defendant met near the door and collided with one another. The extent of this "collision is unclear: one guest testified that defendant and Deputy Bowdle "knocked" against one another; another guest testified that they "brushed up" against one another. Deputy Shipley testified that defendant was attempting to get to the door first and "pushed" Deputy Bowdle out of the way. Deputy Bowdle testified:

"He put his hand on my arm. And basically it wasn't really like a struggle type thing. I felt comfortable not having to use—Deputy Shipley was coming up at the same time also. And I knew it wouldn't really be an issue. There was two of us and one of him, and I was ahead of him, but it was almost like a race, you know, whoever could get there the fastest was going to get the gun.

"And I just kind of blocked his, you know, kind of held fast to the doorway so he couldn't get through. I could

plainly see the gun sitting on the counter. And then Deputy Shipley grabbed his arm, and I kind of helped him and backed him up. And then I went and got the gun."

Deputy Bowdle brought the gun outside, removed it from the holster, examined it, and determined that it was a loaded .22-caliber handgun. The officers then arrested defendant for being a felon in possession of a firearm. During the arrest, the three guests repeatedly told the deputies that the gun was not defendant's.

At the close of the state's case, defendant moved for a judgment of acquittal on the ground that the state had failed to present evidence sufficient to support a finding that he had possessed the gun. The court denied the motion. Defendant subsequently testified that he told the deputies not to go into the trailer because they were "going in there and [trying] to get into my house constantly." He also testified that he was trying to exercise control over the trailer, not the gun. The court ultimately convicted defendant of the charge.

■       On appeal, defendant argues that the trial court erred in denying his motion for judgment of acquittal because the state failed to present evidence sufficient to support a finding that he possessed the firearm. The state contends that the trial court ruled correctly because a factfinder could find that defendant possessed the firearm when he sought to retrieve the firearm and to stop Deputy Bowdle from entering the trailer to retrieve it. We agree with the state.

ORS 166.270(1) provides that any person who has been convicted of a felony under state or federal law and who has "in the person's possession or under the person's custody or control any firearm" commits the crime of being a felon in possession of a firearm. ORS 161.015(9) defines "possess" as to have "physical possession or otherwise to exercise dominion or control over property."

■ ■       The state does not contend that defendant ever physically possessed the firearm; therefore, the issue is whether he exercised dominion or control over it, that is, whether he constructively possessed it. To establish constructive possession, the state must show that defendant "knowingly exercised control of or the right to control" the

firearm. *State v. Coria*, 39 Or App 507, 511, 592 P2d 1057, *rev den*, 286 Or 449 (1979). The right of control may be exercised jointly with other people; it need not be exclusive in order for a defendant to be criminally responsible. *Id.*

■ To prove control, the state must show that the firearm was available for defendant's use. *State v. Marsh*, 78 Or App 290, 294, 716 P2d 261, *rev den*, 301 Or 320 (1986). In *Marsh*, the defendant was the passenger in a car that police stopped because it was connected to a string of credit card forgeries. After a firearm was found in a purse in the trunk, the defendant was charged with possession of the firearm. The defendant testified that he knew that the firearm was in a purse in the trunk and that he told the driver that they should "get rid of that." The driver testified that the firearm did not belong to the defendant and that she had put it in the purse. We held that the "[d]efendant's admitted knowledge that the gun was in the car, available for his use, is sufficient evidence to support the conclusion that he was in constructive possession of the weapon." *Id.*; *see also State v. Miller*, 238 Or 411, 413, 395 P2d 159 (1964) (knowledge by the driver of a car that there are concealable weapons in the car, available for the driver's use, is evidence of possession, custody, or control of the weapons). *But see State v. Wells*, 147 Or App 125, 130, 935 P2d 447 (1997) (mere presence in a vehicle is not enough to make a defendant guilty of constructive possession of a stolen firearm that another person in the vehicle actually possessed).

In *State v. Wrisley*, 138 Or App 344, 349, 909 P2d 877 (1995), *rev dismissed*, 323 Or 690 (1996), we concluded that the defendant could be found to have constructively possessed a firearm that had been passed around the back seat of a vehicle driven by co-conspirators to an armed robbery. Each co-conspirator had at some time physically possessed the firearm, the defendant was aware of the firearm's presence, and passing it around the back seat made it even more readily available for his use than was the firearm in *Marsh*. *Id.*

Here, the evidence was sufficient to support a finding that defendant knowingly exercised control over the firearm by telling the officers that he would retrieve it from the

trailer for them and by walking toward the trailer to do that. It makes no difference that defendant intended to retrieve the firearm for the officers. Furthermore, defendant's attempt to prevent the officers from retrieving the firearm was a further exercise of control by defendant over the firearm. Defendant's exercise of control over the firearm constituted constructive possession of it.

We recognize the dilemma that defendant faced between preventing what he believed to be an unlawful entry by the police into his residence to retrieve the firearm and asserting or taking control of the firearm himself. Nevertheless, the choice that he made to exercise control over the firearm subjected him to liability under ORS 166.270 for being a felon in possession of a firearm.

Affirmed.