Argued and submitted November 3, 2008, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings March 5, 2009

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## RICHARD BRIAN CASEY,
*Petitioner on Review.*

(CC CR030474; CA A125350; SC S055674)

203 P3d 202

Shawn Evans Wiley, Chief Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on

review. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Denis M. Vannier, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

KISTLER, J.

**KISTLER, J.**

The question in this case is whether defendant constructively possessed a gun that his guest put on defendant's counter as defendant and the guest briefly stepped out of defendant's trailer. The trial court denied defendant's motion for judgment of acquittal and, sitting as the trier of fact, found defendant guilty of being a felon in possession of a firearm. The Court of Appeals affirmed. *State v. Casey*, 215 Or App 76, 168 P3d 315 (2007). We allowed defendant's petition for review and now reverse the Court of Appeals decision and the trial court's judgment.

Because this appeal arises from the trial court's denial of defendant's motion for judgment of acquittal, we state the facts in the light most favorable to the state. *State v. Wolleat*, 338 Or 469, 471, 111 P3d 1131 (2005). Defendant had three guests over to his trailer on a piece of property in Yamhill County. One of his guests, Mealue, had concealed a gun on his person before he entered defendant's trailer. Approximately 15 minutes after defendant's guests arrived, two police officers drove up to the trailer to investigate a trespassing complaint against defendant. As the officers arrived, defendant and another guest began leaving the trailer, and the officers asked the other two guests to come out of the trailer. Defendant was the second person to come out of the trailer, and Mealue was the third. As Mealue was leaving the trailer, he took the gun from under his shirt and put it on a counter just inside the door but visible from outside the trailer. As Mealue did so, he told the officers, "I have a gun * * * and it is on the counter, just to let you boys know." Defendant said that the gun was not his and that he "didn't see it until [he was] on the way out of his trailer."

After defendant and his guests came outside, the officers told defendant that he did not have a right to be on the property. Defendant said that he did and that he had documents to prove it. With the officers' consent, defendant went back into the trailer and got the documents. After defendant got the documents, one of the officers noticed that a bowl inside the trailer appeared to contain contraband. Again with the officers' consent, defendant went into the trailer and retrieved the bowl, which contained rocks. The officers asked

if anyone was a convicted felon, and defendant acknowledged that he was.

The officers decided to retrieve the gun from the trailer. Defendant objected to the officers' going into his trailer and told them that he or one of his guests would get the gun. An officer told defendant that defendant could not get the gun because he was a felon and doing so would be illegal. As one of the officers began walking toward the trailer to get the gun, defendant "raced" to the door, grabbed the officer's arm, and said, "[Y]ou are not going into my house." The officer, however, had gotten there first and blocked the door to the trailer. The other officer restrained defendant while the first officer reached into the trailer and took the gun off the counter. After they had gotten the gun, one of the officers told defendant that he could not have allowed defendant to get the gun because "you are a felon and that's basically illegal." Having said that, the officers arrested defendant for being a felon in possession of a firearm, and the state charged him with that offense.

At the close of the state's case, defendant moved for a judgment of acquittal, arguing, among other things, that the evidence was insufficient to prove that he had possessed Mealue's gun. The trial court denied the motion. Later, sitting as the trier of fact, the trial court found defendant guilty of being a felon in possession of a firearm. The court concluded that, although defendant did not have actual possession of the firearm, he had constructive possession of it. The court found that, when defendant went back into the trailer to retrieve the documents and suspected contraband (the bowl of rocks), the gun was "something * * * over which [defendant] had a right to exercise control just like everything else that was inside of the trailer." As the court explained, defendant "did voluntarily go back into the residence, come within range of the weapon at the time when he was a convicted felon * * * and that constitutes felon in possession of a firearm." The trial court entered judgment accordingly.

The Court of Appeals affirmed the trial court's judgment. Rather than focus on defendant's entries into the trailer, as the trial court had, the Court of Appeals focused on

defendant's attempt to deny the officers entry into his trailer. *Id.* at 81-82. The court explained that "defendant knowingly exercised control over the firearm by telling the officers that he would retrieve it from the trailer for them and by walking toward the trailer to do that." *Id.* We allowed defendant's petition for review to consider whether the evidence was sufficient to permit a reasonable trier of fact to find beyond a reasonable doubt that defendant possessed Mealue's gun. *See State v. Fries*, 344 Or 541, 545, 185 P3d 453 (2008) (stating the standard of review).

In analyzing that question, we begin with the text of ORS 166.270(1). That statute provides that a person commits the crime of being a felon in possession of a firearm if the person "has been convicted of a felony * * * [and] owns or has in the person's possession or under the person's custody or control any firearm." The plain wording of that statute requires proof of three elements. The first element is that the person has been convicted of a felony, which defendant does not challenge. The second element is that the item in question is a firearm, which defendant does not challenge on appeal.[1] Finally, the third element is that a defendant must either "own" or have "possession," "custody," or "control" of the firearm.

Ownership, possession, custody, and control are related and often overlapping concepts. Originally, the legislature did not define any of those terms,[2] and this court historically focused on the broader legal concepts of actual and constructive possession in interpreting the felon-in-possession statute. In 1964, this court held that ORS 166.270 prohibited constructive as well as actual possession of a firearm without ever discussing whether it based that holding on the word "possession" or the word "control" in ORS 166.270. *See State v. Miller*, 238 Or 411, 414, 395 P2d 159 (1964) ("Cases reaching a result seemingly contrary to our present decision and the above-cited cases may be distinguished by the wording of

---

[1] Defendant argued before the trial court that the gun was not "readily capable" of use under ORS 166.210(3) and thus not a firearm; however, defendant has not raised that issue on appeal.

[2] The original version of what is now codified as ORS 166.270 was enacted in 1925, and the acts constituting "possession" under that statute have not changed since. *See* Or Laws 1925, ch 260, § 2.

the particular concealed weapons statute. For example, *People v. Liss*, 406 Ill 419, 94 NE2d 320 (1950), involved an Illinois statute prohibiting concealment of a weapon 'on or about his person.' ").

In 1971, as part of a major revision of the criminal code, the legislature defined the word "possession" for purposes of both the 1971 act and also for existing offenses, including ORS 166.270. *See* Or Laws 1971, ch 743, § 5 ("[T]he provisions of this Act shall govern the construction of and punishment for any offense defined outside this Act * * *."). Under that definition, " 'possess' means to have physical possession or otherwise to exercise dominion or control over property." ORS 161.015(9).[3] That definition of "possess," one of the acts prohibited in ORS 166.270, codifies the concepts of actual and constructive possession. *See Fries*, 344 Or at 545 (so stating). The 1971 definition also appears to be broad enough to encompass the other acts that ORS 166.270 prohibits.[4] Ordinarily, one who "owns" or who has "custody" of an object "exercises dominion and control" over it. The word "control" is found in both the definition of "possess" in ORS 161.015(9) and in ORS 166.270 itself, and the definition of possession in ORS 161.015(9) is consistent with this court's opinion in *Miller*, which held that ORS 166.270 prohibits constructive as well as actual possession.

This case, however, does not require us to decide whether the definition of "possess" in ORS 161.015(9) subsumes every manifestation of the four acts listed in ORS 166.270. In this case, the parties agree that the controlling question is whether defendant "possessed" Mealue's gun, and they assume that ORS 161.015(9) supplies the relevant definition of that word. Specifically, the parties' debate focuses on whether defendant constructively possessed the gun—

---

[3] Some commentators have noted that this definition of constructive possession, common among many jurisdictions, does not refine the inquiry greatly. *See* Charles H. Whitebread & Ronald Stevens, *Constructive Possession in Narcotics Cases: To Have and Have Not*, 58 Va L Rev 751, 759-60 (1972).

[4] It is not surprising that the enumerated methods for creating liability resulted in some overlapping terms. *See National Safe Deposit Co. v. Stead*, 232 US 58, 67, 34 S Ct 209, 58 L Ed 504 (1914) ("[T]here is no word more ambiguous in its meaning than [p]ossession. It is interchangeably used to describe actual possession and constructive possession which often so shade into one another that it is difficult to say where one ends and the other begins.").

namely, whether he "exercise[d] dominion or control" over it. *See* ORS 161.015(9); *Fries*, 344 Or at 545 (discussing statutory definition of constructive possession).

At its core, constructive possession is a way to broaden the crime of possession beyond actual physical control. *See* Wayne R. LaFave, 1 *Substantive Criminal Law* § 6.1(e), 433 (2d ed 2003) ("Constructive possession, which is simply a doctrine used to broaden the application of possession-type crimes to situations in which actual physical control cannot be directly proved, is often described in terms of dominion and control." (footnote omitted)); *see also* Charles H. Whitebread & Ronald Stevens, *Constructive Possession in Narcotics Cases: To Have and Have Not*, 58 Va L Rev 751, 755 (1972) (noting that constructive possession expands the scope of possession statutes to include instances where actual possession cannot be shown but where there is a strong inference that actual possession did exist at one time). Given the nature of constructive possession as an outgrowth of actual possession, it follows that the closer the indicia of constructive possession are to past or future actual possession, the more likely that it is constructive possession exists.

In this case, there are four potential factual bases for finding that defendant constructively possessed Mealue's gun. Defendant could have constructively possessed the gun: (1) when Mealue brought the gun into defendant's trailer; (2) when Mealue left the gun on the counter as he and defendant stepped out of the trailer to speak with the officers; (3) when defendant went back into the trailer to retrieve the documents and the bowl; or (4) when defendant attempted either to block the officers from entering the trailer or to retrieve the gun himself. We consider each possible basis for finding constructive possession in turn.

We begin with Mealue's act of bringing the gun into defendant's trailer. Mealue had concealed the gun on his person before he entered the trailer. There is no evidence that defendant was aware that Mealue was carrying the gun, nor is there any evidence that Mealue brought the gun into the trailer for defendant's use. Rather, the only evidence in the record is that Mealue was acting unilaterally and without

defendant's knowledge. On this record, no reasonable trier of fact could find that defendant exercised dominion or control over the gun that Mealue had concealed on his person. *Cf. State v. Downing*, 185 Or 689, 695-96, 205 P2d 141 (1949) (holding that the jury reasonably could find that the defendant and another person jointly possessed a stolen watch that defendant knew was in their shared living area and that had been acquired through their joint efforts).

Nor is there any evidence from which a reasonable trier of fact could find that defendant exercised dominion or control over the gun when Mealue placed it on the counter as defendant and he were leaving the trailer. As a general matter, guests retain dominion and control over their own property when they visit another person's home. *See Minnesota v. Olson*, 495 US 91, 99-100, 110 S Ct 1684, 109 L Ed 2d 85 (1990) ("[H]osts will more likely than not respect the privacy interests of their guests, who are entitled to a legitimate expectation of privacy despite the fact that they have no legal interest in the premises."). A guest who hangs his or her hat on the host's hat rack for the duration of a visit does not, by that act alone, give the host dominion or control over the guest's hat. Something more is required to permit an inference that the guest intended to cede or share control of the guest's property with the host.

In this case, defendant was leaving the trailer when Mealue told the officers that "he had [a] gun and it is on the counter." Mealue then followed defendant out of the trailer to speak with the officers. There is nothing to suggest that, in putting his gun on the counter, Mealue acted any differently from a guest who temporarily puts his or her hat on the host's hat rack; that is, the evidence in the record suggests only that Mealue put his gun aside briefly while he spoke with the police. That act is not enough to suggest that Mealue entrusted his gun to defendant, left the gun in defendant's custody, or somehow gave defendant the right to exercise dominion or control over it. Correspondingly, there is nothing to suggest that defendant exercised dominion or control over the gun when Mealue put it on the counter as defendant and he stepped out of the trailer to speak with the officers.

This case differs from *Miller*, on which the state relies. In *Miller*, the defendant and another person were driving from the defendant's home in California to Oregon, a distance of approximately 300 to 400 miles. 238 Or at 412. A police officer stopped the car and immediately noticed a revolver sticking out from under the front seat on the passenger side. There was also a pistol under the front seat of the car, midway between the defendant, who was driving, and the passenger, and a third loaded weapon was in the glove box. Also on the front seat were a stocking mask and two left-handed rubber gloves. Finally, a third person had reported to the police that defendant and his passenger had "roll[ed]" him. *Id.* at 413.

Noting the length of time that the defendant had been driving the car and the "obviousness of the revolver which was sticking out from under the front seat," the court explained that a reasonable juror could infer that the defendant both was aware of all three guns and constructively possessed them. *Id.* at 414. This case differs from *Miller* in that there is no evidence that defendant knew that Mealue either possessed the gun or had placed it on the counter until defendant had started to leave the trailer; the length of time that Mealue left the gun on the counter was brief; and there is no evidence, as there was in *Miller*, from which a reasonable juror could infer that Mealue and defendant jointly possessed the gun.

The trial court relied primarily on the third factual basis in concluding that defendant constructively possessed Mealue's gun; that is, the trial court relied on defendant's proximity to the gun when he went back into the trailer to retrieve the documents and the bowl of rocks in finding constructive possession. We reach a different conclusion. As explained above, Mealue retained dominion and control over the gun when he temporarily put it on the counter while he and defendant went outside to speak with the officers. The fact that the officers permitted defendant to reenter the trailer for a limited purpose—to retrieve specific items—provides no basis for saying that defendant exercised dominion and control over the gun. At most, defendant's entry into the trailer establishes proximity between defendant and the gun for a brief period of time and, without more, is not sufficient

to establish constructive possession. *Cf. State v. Weller*, 263 Or 132, 133, 501 P2d 794 (1972) (evidence that the defendant lived in a bedroom on the second floor of a house occupied by another couple insufficient basis to find that the defendant had the right to exercise control over growing marijuana found in an unoccupied bedroom on the same floor); *State v. Oare*, 249 Or 597, 599-600, 439 P2d 885 (1968) (holding the "mere fact that [the guest] was present at the attempted disposal of [marijuana] in someone else's home" insufficient to find constructive possession).

Finally, when the officers told defendant that he could not go back into the trailer to retrieve Mealue's gun, defendant unsuccessfully tried to get to the door of the trailer before the officers. He repeatedly told them that he did not want them to go inside his home. A reasonable trier of fact could draw two related but separate inferences from defendant's acts. It could infer that defendant was attempting to enter the trailer to retrieve the gun himself. Additionally, it could find that defendant was attempting to block the officers from entering his home. Focusing on the first inference, the Court of Appeals reasoned that defendant's attempt to retrieve the gun was sufficient to establish that he constructively possessed it. *Casey*, 215 Or App at 81-82. However, if, as we have explained, no reasonable trier of fact could find that defendant constructively possessed the gun before he attempted to go back into the house and retrieve it, then defendant's unsuccessful attempt to retrieve the gun establishes at most attempted possession. Defendant's unsuccessful attempt cannot convert his lack of possession into completed possession.

Focusing on the second inference, the Court of Appeals reasoned, alternatively, that defendant's attempt to prevent the officers from entering his home "was a further exercise of control by defendant over the firearm." *Id.* at 82. The Court of Appeals' alternative rationale suffers from a similar problem as its initial rationale. If, as we have concluded, defendant's ownership of his home was not sufficient to permit an inference that defendant possessed the gun that Mealue briefly left there, then defendant's assertion of his right to control the officer's entry into his home does not somehow transfer possession of Mealue's gun to defendant.

Nothing about the relationship between defendant and the gun changed by virtue of defendant's assertion of that broader right. On this record, the trial court erred in denying defendant's motion for judgment of acquittal on the charge of possessing a firearm.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.