**Filed: September 9, 2011**

IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,

Petitioner on Review,

v.

JOHN NORMAN RYAN,

Respondent on Review.

(CC 070749206; CA A137536; SC S059065)

En Banc

On review from the Court of Appeals.*

Argued and submitted on June 8, 2011.

Janet A. Klapstein, Senior Assistant Attorney General, Salem, argued the cause for petitioner on review. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Kenneth A. Kreuscher, Portland Law Collective, Portland, argued the cause argued the cause and filed the brief for respondent on review.

Margaret Garvin, Alison Wilkson, Robin J. Selig, and Janine Robben, filed a brief on behalf of *amici curiae* National Crime Victim Law Institute, Oregon Law Center, and Oregon Crime Victims Law Center.

DE MUNIZ, C. J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

Kistler, J., concurred and filed an opinion.

*Appeal from Multnomah County Circuit Court, Youlee Y. You, Judge. 237 Or App 317, 239 P3d 1016 (2010).

DE MUNIZ, C. J.

This case involves the intersection of free speech rights under Article I, section 8, of the Oregon Constitution, and the crime of violating a stalking protective order, ORS 163.750. Defendant violated the terms of a stalking protective order by contacting the victim through a third party and was subsequently found guilty by a jury of two counts of violating ORS 163.750. The Court of Appeals reversed defendant's convictions. That court reasoned that Article I, section 8, required that ORS 163.750 be judicially narrowed to require "an unequivocal threat of the sort that makes it objectively reasonable for the victim to believe that he or she is being threatened with imminent and serious physical harm," and so the state had failed to meet its burden of proof on both counts. *State v. Ryan*, 237 Or App 317, 325, 239 P3d 1016 (2010). On review, we reverse the Court of Appeals and affirm defendant's judgment of conviction. We hold that, because defendant's communications with the victim were already prohibited by the stalking protective order, the state was not required by Article I, section 8, to prove under ORS 163.750 that defendant had communicated an unequivocal threat to the victim.

The pertinent facts are not disputed. Because the trial court denied defendant's motion for judgment of acquittal, we state the facts in the light most favorable to the state. *See, e.g.*, *State v. Casey*, 346 Or 54, 56, 203 P3d 202 (2009) (stating standard).

The victim is an editor with the Portland Tribune, a weekly newspaper. In 2005, the newspaper sponsored a social event to which the public was invited. Defendant attended the event, although the victim does not recall meeting defendant there.

1

Soon afterward, defendant began writing to the victim. Among other things, defendant's letters seemed to assume that he and the victim were involved in a relationship. In one letter, defendant described himself and the victim as being "'like a modern Romeo and Juliet.'" After the victim wrote about her seven-year-old son in the paper, defendant sent a letter stating that he would "'like your son to come with us on these dates,'" although there were no dates. In another letter, defendant stated that his life was "'very much like a real life computer virus that affects people, malicious contamination, then anyone can be infected.'" Defendant did not in any of those communications expressly threaten to harm the victim or her family.

After the letters started, they began coming more frequently, sometimes several per week, and defendant began to show up at the newspaper office asking for the victim. Defendant also left the victim phone messages, both at her home and at her work. Defendant located the victim's parents and went to their house. The victim, her coworkers, and her fiancé repeatedly told defendant to stop attempting to contact the victim.

The victim became concerned that defendant might become violent if his fantasies of a relationship with the victim were dispelled. She was also frightened by defendant's references in his letters to her son and by the fact that defendant had discovered where her parents lived. On March 14, 2007, the victim obtained a temporary

stalking protective order against defendant.[1]

The temporary stalking protective order directed defendant "to stop any contact with the person protected by this order, and any attempt to make contact with the person protected by this order." (Capitalization deleted.) The order also defined "contact," as including, among other things,"[c]ommunicating with the other person by any means, including through a third person." *See* ORS 30.866(2) (temporary stalking protective order "may include, but is not limited to, all contact listed in ORS 163.730"); ORS 163.730(3)(f) (defining "contact" to include "[c]ommunicating with the other person through a third person"). Defendant received notice of the order.

Nevertheless, defendant continued to attempt to contact the victim, using her father as a "filter" to avoid communicating with her directly. On or about May 7, 2007, defendant sent a letter to the victim's father. Defendant asked the father to thank the victim "for her support and answering questions regarding intuition and gifted people," and to "wish her a happy Mother's Day * * * as appropriate." Defendant enclosed a copy of a letter to a local pastor. Among other things, the letter stated:

---

[1] The temporary order later became permanent, albeit after the events at issue in this case. *See Van Buskirk v. Ryan*, 233 Or App 170, 225 P3d 118, *rev dismissed*, 348 Or 218 (2010) (affirming on appeal that permanent stalking protective order). In *Van Buskirk*, the Court of Appeals agreed with the defendant that his communications alone did not provide a basis for the entry of the stalking protective order. However, that court sustained the entry of the stalking protective order, reasoning that "[i]n light of [defendant's] many communications, the noncommunicative contacts form a pattern of behavior that made [the victim's] apprehension reasonable." *Id.* at 177.

3

"Indications are that [the victim] would like a love so strong, so realistic and grounded that it will grow in splendor and last until we die.  I would like this as well and believe I am uniquely suited to the task."

On or about May 14, 2007, defendant had a package delivered to the victim's father's workplace.  The package contained a Mother's Day card, a music CD, and another letter.  The letter referred to defendant's several attempts to contact the victim through intermediaries, including forwarding a dozen roses as a Mother's Day gift.  The letter also asked the victim's father to pass along to the victim, defendant's "thanks, as appropriate," and his "gratitude, if appropriate."

On July 30, 2007, defendant was charged under ORS 163.750 with three counts of violating a stalking protective order.  At trial, defendant moved for judgment of acquittal on each charge on the ground (among others) that Article I, section 8, required the state to prove (in addition to the stated elements of the crime) that he had made an unequivocal threat that caused the victim to fear imminent and serious personal violence, and that the threat was objectively likely to be followed by illegal acts.  *See State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999) (imposing a similar limitation on the crime of stalking under ORS 163.732, when communications formed the factual basis for that crime).  The trial court denied defendant's motion, and later denied defendant's request for a jury instruction that would have required the jury to find the same additional elements.  The jury found defendant guilty of two counts relating to the May 7 and May 14 letters, and acquitted defendant of a third count.

Defendant appealed to the Court of Appeals, renewing his argument that his communications to the victim were protected by Article I, section 8, because they did not

4

involve the level of threats identified by this court in *Rangel*. The Court of Appeals agreed. After reviewing the opinion in *Rangel*, the court concluded that Article I, section 8, protected communications otherwise prohibited by ORS 163.750, unless those communications involved an unequivocal threat that created "'fear of imminent and serious personal violence * * * and is objectively likely to be followed by unlawful acts.'" *Ryan*, 237 Or App at 325 (alteration in original; quoting *Rangel*, 328 Or at 303). Because none of the communications for which defendant was convicted contained such threats, 237 Or App at 325, the Court of Appeals concluded that the trial court should have granted defendant's motion for judgment of acquittal as to those counts. *Id*. at 328. One judge concurred, but wrote separately to express her view that *Rangel* was too restrictive when applied to stalking. *Id*. at 329 (Rosenblum, P. J., concurring).

We allowed the state's petition for review to consider, in the context of defendant's overbreadth challenge, the extent to which the free speech rights analysis of *Rangel* may apply to the crime of violating a stalking protective order. To answer that question, we begin with the applicable statutes.

A person may obtain a stalking protective order in two ways. One method involves filing a complaint with law enforcement. *See* ORS 163.735 - 163.744 (outlining procedure). The other method -- the one used by the victim in this case -- does not require law enforcement involvement. The victim instead directly petitions the circuit court to issue a civil stalking protective order. ORS 30.866.

Under either method, however, the standard for issuing a stalking protective order is the same. The circuit court must find that:

"(a) The person intentionally, knowingly or recklessly engages in repeated and unwanted contact with the other person or a member of that person's immediate family or household thereby alarming or coercing the other person;

"(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

ORS 30.866(1); *see* ORS 163.738(2)(a)(B) (identical).[2]

When the trial court enters a stalking protective order, it may prohibit any contact between the defendant and the victim:

"In the order, the court shall specify the conduct from which the respondent is to refrain, which may include all contact listed in ORS 163.730 and any attempt to make contact listed in ORS 163.730."

ORS 163.738(2)(b); *see* ORS 30.866(3)(a) (for civil stalking protective orders, trial court may "enter a court's stalking protective order and take other action as provided in ORS 163.738"); ORS 30.866(2) (temporary civil stalking protective order "may include, but is not limited to, all contact listed in ORS 163.730").  A stalking protective order that prohibits "contact" may reach any number of ways in which a defendant could interact with a victim.  *See* ORS 163.730(3) (defining "contact").[3]  "Contact" includes almost any

---

[2]    In this case, defendant was charged with misconduct that occurred while he was subject to a temporary stalking protective order.  Such temporary stalking protective orders are authorized by statute.  *See* ORS 30.866(2) (civil stalking protective orders); ORS 163.738(2)(a)(A) (criminal stalking protective orders).  The temporary nature of the stalking protective order is not relevant to any of the issues presented in this case.

[3]    ORS 163.730 provides, in part:

form of communication with the victim, including writing or speaking to the victim in any way or contacting the victim through a third party. ORS 163.730(3)(d) - (f).

An order incorporating that statutory prohibition on communications in theory could implicate Article I, section 8. However, defendant presents a hybrid overbreadth challenge to ORS 163.750 that argues inconsistently about the legal

"(3) 'Contact' includes but is not limited to:

"(a) Coming into the visual or physical presence of the other person;

"(b) Following the other person;

"(c) Waiting outside the home, property, place of work or school of the other person or of a member of that person's family or household;

"(d) Sending or making written or electronic communications in any form to the other person;

"(e) Speaking with the other person by any means;

"(f) Communicating with the other person through a third person;

"(g) Committing a crime against the other person;

"(h) Communicating with a third person who has some relationship to the other person with the intent of affecting the third person's relationship with the other person;

"(i) Communicating with business entities with the intent of affecting some right or interest of the other person;

"(j) Damaging the other person's home, property, place of work or school;

"(k) Delivering directly or through a third person any object to the home, property, place of work or school of the other person; or

"(L) Service of process or other legal documents unless the other person is served as provided in ORCP 7 or 9."

7

significance of the court's order in this case. On the one hand, defendant asserts that he does not in this case challenge any aspect of the stalking protective order itself. Furthermore, defendant concedes that violation of a stalking protective order may be punished by contempt without violating Article I, section 8. As defendant stated in his brief, "defendant here does *not* attack the validity of the underlying stalking protective order and does *not* argue that he is free simply to ignore the protective order." (Emphases in original.) On the other hand, he invites the court to assume that the order here was indisputably unlawful, because it reached protected speech. But defendant cannot have it both ways. As we conclude below, defendant cannot succeed in his asserted *facial* challenge for overbreadth by pointing to the terms of the unchallenged court order in this case.

Defendant challenges only his conviction for the *crime* of violating a stalking protective order, ORS 163.750. That statute provides, in part:

"(1) A person commits the crime of violating a court's stalking protective order when:

"(a) The person has been served with a court's stalking protective order as provided in ORS 30.866 or 163.738 or if further service was waived under ORS 163.741 because the person appeared before the court;

"(b) The person, subsequent to the service of the order, has engaged intentionally, knowingly or recklessly in conduct prohibited by the order; and

"(c) If the conduct is prohibited contact as defined in ORS 163.730(3)(d), (e), (f), (h) or (i), the subsequent conduct has created reasonable apprehension regarding the personal safety of a person protected by the order.

"(2)(a) Violating a court's stalking protective order is a Class A misdemeanor."

8

Ordinarily, the crime of violating a stalking protective order requires only intentional, knowing, or reckless disobedience of the order after it has been served (or service has been waived).  ORS 163.750(1)(a) - (b).  When certain types of misconduct are involved, however, the state also must prove that the misconduct created a reasonable apprehension for the personal safety of a person protected by the stalking protective order.  ORS 163.750(1)(c).  The types of misconduct requiring that additional proof of a reasonable apprehension for personal safety -- *i.e.*, misconduct involving the forms of contact described by ORS 163.730(3)(d), (e), (f), (h), or (i) -- all involve a defendant's communication with the victim.[4]  Thus, the statute does criminalize certain speech, although it reflects some sensitivity to free speech rights by requiring that the state prove an additional element -- reasonable apprehension regarding personal safety of a person

---

[4]     The forms of conduct that require additional proof are:

"(d) Sending or making written or electronic communications in any form to the other person;

"(e) Speaking with the other person by any means;

"(f) Communicating with the other person through a third person;

"* * * * *

"(h) Communicating with a third person who has some relationship to the other person with the intent of affecting the third person's relationship with the other person; [or]

"(i) Communicating with business entities with the intent of affecting some right or interest of the other person[.]"

ORS 163.730(3)(d), (e), (f), (h), & (i).

protected by the order.

In this case, defendant was convicted of one of the communicative types of misconduct -- communicating with the victim through a third person, ORS 163.730(3)(f) -- requiring the state to also prove that defendant's conduct created a reasonable apprehension regarding the personal safety of the victim. Defendant asserts, however, that the additional proof requirement for communicative activity required by the statute is not sufficient to comply with Article I, section 8. According to defendant, unless ORS 163.750 is judicially narrowed to require proof of an unequivocal threat making it objectively reasonable for the victim to fear imminent and serious personal violence from the speaker, the statute is overly broad and violates his right to free speech under Article I, section 8.[5] More specifically, defendant relies on this court's interpretation of Article I, section 8, in *Rangel*. We turn to that case.

*Rangel* involved a challenge to the constitutionality of a related statute, ORS 163.732, which defines the crime of stalking. Briefly, that statute makes it a crime to knowingly alarm or coerce a victim by engaging in repeated, unwanted contacts that reasonably alarm or coerce the victim and that also create a reasonable fear for personal

---

[5]     Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right.-"

10

safety.[6] The stalking statute uses the same statutory definition of "contact" as the crime at issue in this case. ORS 163.730(3). Thus, the stalking statute could be violated by communicative activity.

In *Rangel*, the court began by noting that ORS 163.732 was directed at a forbidden effect -- repeated and unwanted contacts -- and expression was one means by which that forbidden effect could be produced. 328 Or at 298-99. Accordingly, the court had to consider whether the statute was overbroad -- specifically, "whether [the statute] reaches privileged communication and, if it does so more than rarely, then whether a narrowing construction is possible to save it from overbreadth." *Id.* at 299 (footnote omitted). Given the expansive definition of "contact" under ORS 163.730(3), the court concluded that the crime of stalking could reach "protected expression in a variety of political and social settings," and that those instances would not be rare. 328 Or at 301-02.

---

[6] Specifically, ORS 163.732(1) provides:

"A person commits the crime of stalking if:

"(a) The person knowingly alarms or coerces another person or a member of that person's immediate family or household by engaging in repeated and unwanted contact with the other person;

"(b) It is objectively reasonable for a person in the victim's situation to have been alarmed or coerced by the contact; and

"(c) The repeated and unwanted contact causes the victim reasonable apprehension regarding the personal safety of the victim or a member of the victim's immediate family or household."

Having concluded that ORS 163.732 was overbroad, the *Rangel* court turned to "whether we can interpret the stalking statute to eliminate any overbreadth while maintaining reasonable fidelity to the legislature's words and apparent intent." 328 Or at 302. The court concluded that it could. The crime of stalking requires that the defendant knowingly alarm or coerce the victim, and the court determined that both alarm and coercion require a *threat*. *Id.* at 302-03. The court reasoned that, to pass constitutional scrutiny under Article I, section 8, that threat must "instill[] in the addressee a fear of imminent and serious personal violence from the speaker," must be "unequivocal," and must be "objectively likely to be followed by unlawful acts." 328 Or at 303; *see id.* at 306 (summarizing court's conclusion). After judicially narrowing ORS 163.732 to reach only those kinds of unequivocal threats, the court concluded that the statute was not overbroad under Article I, section 8. 328 Or at 306.

Defendant contends -- and the Court of Appeals agreed -- that the *Rangel* analysis applies equally to the statute at issue in this case, ORS 163.750. Specifically, defendant asserts that the statute at issue here is overbroad. He agrees that the statute would be constitutional if judicially narrowed to apply only to the sort of unequivocal threat described in *Rangel*. However, defendant argues, because the state offered no proof that defendant had made the kind of unequivocal and imminent threat that *Rangel* requires, the trial court should have granted his motion for judgment of acquittal on each of the counts for which he was convicted.

The state responds that defendant is making an impermissible collateral attack on the underlying stalking protective order. This court has previously explained

12

that a party may be punished by contempt for disobeying a court order, even if the order was erroneous or exceeded the court's authority:

> "If a court has jurisdiction over the parties and the subject matter, and its order or decree is not complied with, that court may hold the noncomplying party in contempt even if it later appears that the original order or decree was either erroneous or in excess of the court's authority. The integrity of the judicial process demands compliance with court orders until such time as they are altered by orderly appellate review. Litigants are not entitled to sit in judgment on their own cases, and they must follow the appropriate channels for review of decisions they believe to be invalid. Unless and until an invalid order is set aside, it must be obeyed. Only when there has been no other opportunity to raise the issue can the validity of the underlying order be litigated in a subsequent contempt proceeding."

*State ex rel Mix v. Newland*, 277 Or 191, 200, 560 P2d 255 (1977).

Although defendant was not charged with contempt, the state contends that the same principle applies here. If defendant wanted to challenge the constitutionality of the stalking protective order, the state maintains, he should have done so on direct appeal, not by disobeying the order and then challenging his subsequent conviction for violating ORS 163.750.[7]

Defendant does not dispute the rule cited by the state. Instead, he counters that the doctrine does not apply here, because he claims that he does not challenge the stalking protective order. As we noted previously, defendant stated that he "does *not* attack the validity of the underlying stalking protective order and does *not* argue that he is

---

[7] As noted previously, defendant did challenge the validity of the stalking protective order and the Court of Appeals sustained the entry of the order. *See* ___ Or at ___ n 1 (slip op at 3 n 1).

13

free simply to ignore the protective order." (Emphases in original.) He made the same concession in the trial court and in the Court of Appeals.[8] Yet, he argues, inconsistently, that this court should recognize that the trial court's order in this case limits speech to a greater degree than *Rangel* allowed and was unlawful for that reason. Defendant asserts that, even if we accept his argument, "the underlying protective order will be unchanged." Defendant also suggests in his brief, and later conceded at oral argument, that he could constitutionally be held in contempt for violating the stalking protective order. Despite defendant's somewhat inconsistent arguments here, we agree with defendant that his concession that the stalking protective order is valid and constitutional answers the state's

---

[8]     At trial, the following colloquy occurred:

"[THE STATE:] If [defendant] is suggesting that the Stalking Order itself is -- is in error, then -- then that's -- that's a case for another Court. We're saying there is -- there is a live and valid Stalking Order which prohibits any contact.

"THE COURT: Okay. And let me ask [defendant], what's your response to that? Because aren't you just challenging the underlying validity of the Stalking Protective Order?

"[DEFENDANT:] I am not.

"THE COURT: And -- and isn't the -- I mean, isn't the Order itself saying that you may not have contact? I mean, the Order * * * doesn't -- itself exclude protected speech. It says, 'No contact.'

"[DEFENDANT:] And, Your Honor, if the State brought a Contempt of Court charge against my client because my client violated an Order of the Court, that's one thing. And they do that in Violating Restraining Order cases, where there is no constitutional issue because it is a clear Contempt."

14

argument that defendant is making an impermissible collateral attack on the stalking protective order. As we will explain, ORS 163.750 is not overbroad, at least in the context of the particular arguments that defendant makes.

"An overbroad statute is one that proscribes speech or conduct that the constitution protects." *Rangel*, 328 Or at 299 (citation omitted). The crime at issue here, ORS 163.750, applies only to those communications already prohibited by the stalking protective order. (In fact, it only applies to a subset of those prohibited communications -- those that create a "reasonable apprehension regarding the personal safety of a person protected by the order.") The statute does not apply to any communications not already prohibited by a stalking protective order.

Defendant suggested in his brief, and later conceded at oral argument, that he could constitutionally be held in criminal contempt for violating the stalking protective order. Like criminal contempt, ORS 163.750 punishes a person for violating a court order. The restriction on defendant's speech rights occurred (if at all) when the trial court entered a stalking protective order that barred defendant from communicating with the victim in any way. As explained above, ORS 163.750 does not reach any speech not otherwise prohibited by the concededly lawful order. Therefore, a defendant who seeks to challenge a conviction under ORS 163.750 on free speech grounds first must successfully attack the underlying stalking protective order. Because defendant conceded the validity of the stalking protective order in this criminal proceeding, his

15

communications to the victim in violation of the order were not protected by Article I, section 8.[9]

We conclude that the trial court correctly denied defendant's motion for judgment of acquittal on the two counts for which he was convicted.[10]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

[9] As noted earlier, defendant did challenge the constitutional validity of the stalking protective order and that challenge was rejected by the Court of Appeals. *See* ___ Or at ___ n 1 (slip op at 3 n 1). We express no opinion on the proper mechanism or procedure for challenging the constitutional validity of a previously entered stalking protective order in the context of a subsequent criminal prosecution.

[10] Although the Court of Appeals did not reach a second assignment of error by defendant, we conclude that no remand is necessary here. The defendant's second assignment of error relied on the same legal argument to assert that the trial court should have instructed the jury that it could not convict without finding the sort of unequivocal threat described in *Rangel*. Our reasoning here disposes of that second assignment of error as well.

**KISTLER, J.,** concurring.

I join the majority's opinion but write separately to address one aspect of defendant's overbreadth argument. ORS 163.750(1) makes it a crime to violate a stalking protective order if (a) the person has been served with a copy of the order, (b) the person "intentionally, knowingly or recklessly engages in conduct prohibited by the order," and (c) if the prohibited conduct was communicative, the conduct created a "reasonable apprehension regarding the personal safety of [the] person protected by the [stalking protective] order."

In this case, the stalking protective order prohibited defendant from having any contact, communicative or otherwise, with the victim. As the majority notes, defendant does not argue that the stalking order in this case violates Article I, section 8, nor would such an argument be an easy one to make. The stalking order that gives rise to this case is speech-neutral. It prohibits defendant from having "any contact" with the victim without regard to what defendant might or might not say, or even if he says nothing at all. *Cf. United States v. O'Brien*, 391 US 367, 377, 88 S Ct 1673, 20 L Ed 2d 672 (1968) (explaining when a speech-neutral law may be applied to expressive conduct consistently with the First Amendment). Defendant also does not argue, correctly in my view, that ORS 163.750 would violate Article I, section 8, if all that statute did was to make it a crime to violate the stalking protective order in this case. Because a stalking protective order that prohibits a person from having any contact with the victim does not violate Article I, section 8, punishing a person for violating that order cannot give rise to an Article I, section 8 violation.

1

Defendant appropriately focuses his argument more narrowly on ORS 163.750(1)(c). As noted, that subsection provides that, when the conduct that violates a stalking protective order involves communication, the state must show that that "conduct created reasonable apprehension regarding the personal safety of a person protected by the order." Defendant argues that, because subsection (1)(c) makes speech an element of the crime, that subsection must be scrutinized for overbreadth. *See State v. Plowman*, 314 Or 157, 164, 838 P2d 558 (1992) (quoting *State v. Robertson*, 293 Or 402, 417-18, 649 P2d 569 (1982)). Defendant contends that, to avoid overbreadth, we should construe subsection (1)(c) narrowly, in the same way that this court construed a comparable subsection of a related statute in *State v. Rangel*, 328 Or 294, 306, 977 P2d 379 (1999).

Although the subsection at issue in this case and the subsection at issue in *Rangel* are worded similarly, they serve different functions. The subsection at issue in *Rangel* defined the predicate acts necessary to prove the crime of stalking. *See id.* at 296 (setting out ORS 163.732(1)(c)). By contrast, the subsection at issue in this case narrows the class of prohibited conduct that will result in criminal liability under ORS 163.750. If, as explained above, Article I, section 8 permits the state to punish defendant for any conduct that violates the stalking protective order in this case, Article I, section 8, does not prohibit the state from punishing defendant for only some of that conduct -- *i.e.*, noncommunicative conduct and communicative conduct that causes reasonable apprehension regarding the personal safety of persons protected by the stalking protective order.

To be sure, the fact that the state may prohibit an entire category of speech

2

does not mean that it can distinguish within that category on the basis of content of the speech or its viewpoint. *See R.A.V. v. St. Paul*, 505 US 377, 391, 112 S Ct 2538, 120 L Ed 2d 305 (1992) (holding that, even though the city could prohibit fighting words generally, it could not prohibit only those "'fighting words' that insult, or provoke violence, 'on the basis of race, color, creed, religion, or gender'"). Subsection (1)(c), however, does not distinguish among prohibited contacts on that basis; it does not punish only those contacts that convey a particular message or advocate a specific viewpoint. Rather, subsection (1)(c) distinguishes among prohibited contacts based on whether the contact "created reasonable apprehension regarding the personal safety of a person protected by the [stalking protective] order." That distinction is, in my view, a permissible one. With that observation, I concur in the majority's opinion.