SHORR, J.
*485 Defendant appeals from a judgment of conviction for two counts each of assault in the second degree, ORS 163.175 ; menacing, ORS 163.190 ; unlawful use of a weapon, ORS 166.220 ; and pointing a firearm at another, ORS 166.190. Defendant was charged following an incident during which defendant, a construction foreman, shot and wounded Hains, one of his employees, with a .22-caliber rifle during an altercation at a construction site. Another employee recorded the altercation with a video camera. At trial, defendant argued that he had acted in self-defense. Over defendant's objection, the trial court allowed the police chief who investigated the incident to provide expert testimony that, based on the video recording, the chief "saw no elements of a crime being committed [by Hains]," effectively refuting defendant's self-defense theory. We conclude that the challenged testimony provided an impermissible legal conclusion with respect to Hains's conduct during the altercation. Further, the erroneous admission of that evidence was not harmless. Accordingly, we reverse and remand.
We provide the following facts as context for our analysis of the trial court's evidentiary ruling. Defendant worked as a foreman on construction projects remodeling houses. Defendant had worked with Hains on and off for several years. Four to six months prior to the charged incident in this case, defendant had fired Hains for being disrespectful toward defendant and making derogatory comments to women on the job. Defendant rehired Hains about one month before the charged incident to assist with a remodel of a home owned by defendant's parents. Another of defendant's workers, Kaleikini, helped with that project as well.
As the project progressed, defendant became upset with Hains's behavior-including what defendant viewed as excessive drinking and reckless conduct at work-and decided to fire him again. Defendant asked Kaleikini to come with him and record the firing with a video camera because defendant feared Hains's reaction. Defendant was worried because he knew Hains had a violent temper. Defendant was also concerned because he knew Hains had recently begun *486 drinking after a period of sobriety. Defendant armed himself with a loaded .22-caliber rifle and masked his face with a bandana and then approached Hains, who was working in the garage at the construction site. Defendant immediately fired a "warning shot" in the air upon entering the garage and then told Hains that he was fired and ordered him to leave. After some argument, Hains began to leave the scene but suddenly turned and moved quickly toward defendant. Defendant backed up into the kitchen adjoining the garage and fired more "warning shots." Hains dared defendant to shoot him and then lunged toward defendant, at which point defendant shot Hains in the leg. Hains moved back into the garage, where he turned and bent over to grab something off the ground. Defendant then shot Hains a second time in the buttock. The two shots were several seconds apart. Defendant testified at trial that *973 he shot Hains a second time because Hains had picked up a two-by-four board studded with exposed nails.
A neighbor called the police, who arrived on the scene shortly thereafter. Defendant gave his account of the events and explained that he approached Hains with the gun because he was afraid of Hains and wanted to avoid a physical altercation. Defendant then handed over the gun and video camera with the recording of the altercation.
At trial, defendant asserted that he acted in self-defense when he shot Hains. Although Hains did not suffer life-threatening injuries, on appeal the parties do not dispute that defendant used deadly physical force when he shot Hains.[1] Under ORS 161.219, which describes limitations on the use of deadly physical force in self-defense,
"a person is not justified in using deadly physical force upon another person unless the person reasonably believes that the other person is:
"(1) Committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person; or *487 "(2) Committing or attempting to commit a burglary in a dwelling; or
"(3) Using or about to use unlawful deadly physical force against a person."
To refute self-defense, the state elicited testimony from Brian Harvey, the chief of police for the La Grande Police Department. The state first established that Harvey was an experienced law enforcement officer with special training and expertise in use-of-force analysis. Harvey testified that he had been in law enforcement for nearly 30 years and that, for the past 19 years, he had been a certified instructor with the Department of Public Safety Standards and Training (DPSST), the state agency that trains and certifies police officers in Oregon. Harvey's "area of specialty" as a DPSST instructor is "use of force." In Harvey's words, he instructs police officers on the "legalities, the practical application, and the tactical aspects of use of force," as well as "citizens' use of force to help officers *** determine if it looks like it's a self-defense type situation." In his capacity as an instructor, Harvey "oversaw the use of force training for all law enforcement in the state," coauthored the regional training curriculum for use of force training statewide, and presented at numerous conferences on use of force training. Following that foundation, the trial court recognized Harvey as an expert in the use of force.
The state then asked Harvey to comment on the video recording of the altercation while the recording was played for the jury and specifically to "point out *** the things that were significant" in Harvey's analysis of defendant's self-defense argument. Harvey testified, in part, that he "saw no elements of a crime being committed by [Hains]" during the altercation. The trial court overruled defendant's objection that Harvey's testimony entailed an impermissible legal conclusion.
On appeal, defendant reiterates his argument that Harvey's testimony that he saw "no elements of a crime being committed by [Hains]" was a "statement of law, which is not a proper subject for expert testimony." As a general rule, an expert witness may not testify regarding a legal conclusion. Olson v. Coats , 78 Or. App. 368, 370, 717 P.2d 176 (1986) ; see *488 also Laird C. Kirkpatrick, Oregon Evidence § 702.03(7)(c), 632 (6th ed. 2013) ("In general, questions of law are for the court and not a proper subject for expert testimony to the jury."). Rather, an expert witness may testify to assist the trier of fact "to understand the evidence or to determine a fact issue." OEC 702.[2]
Two of our cases provide examples of the type of testimony that is impermissible. In Olson , a tort case arising from a collision between two trucks at a construction site, we *974 determined that the trial court erred when it allowed a witness to testify to whether the signage at the construction site complied with "whatever the requirements were." 78 Or. App. at 370, 717 P.2d 176. That testimony required the witness to impermissibly "draw a mixed legal and factual conclusion as to whether the signs complied with statutory requirements." Id. Rather than allowing the witness to draw a legal conclusion based on the available evidence, we explained that "the trial court should instruct the jury as to the law; the jury should determine the facts from the evidence and draw its own conclusion." Id. at 371, 717 P.2d 176.
We reached a similar decision in Stokes v. Lundeen , 168 Or. App. 430, 432, 7 P.3d 586, rev. den. , 331 Or. 283, 18 P.3d 1101 (2000), a tort case arising from a vehicle collision in a school zone, in which the defendant argued that the plaintiff was negligent per se because he was speeding through the school zone "when children [were] present" in violation of former ORS 811.105(2)(c)(A) (1995), renumbered as ORS 811.111 (1)(e)(ii) (2003). The trial court excluded expert testimony from a police detective who would have concluded that, under circumstances approximating those at the time of the accident, he would not have issued the plaintiff a citation for a violation of the "children are present" provision of that statute. Id. at 433-34, 7 P.3d 586. The court explained that the excluded testimony "would be more of a legal interpretation rather than a factual conclusion." Id. at 441, 7 P.3d 586. We affirmed that ruling and *489 explained that "the proper construction of subsection 2(c)(A) and, particularly, the meaning of the phrase 'children are present' was a matter of law for the court to determine and to instruct the jury." Id. Whether a particular set of facts met that statutory element was not, in other words, an appropriate question to put to a witness, expert or otherwise.[3]
The trial court in this case recognized the risks of allowing Harvey to render a legal opinion on defendant's self-defense argument. The court initially ruled, outside the presence of the jury, that Harvey could testify regarding "the factors that he considers in evaluating a self-defense claim," but he could not offer an opinion on "whether or not this particular defendant has established the defense of self-defense." As the court correctly explained, "that's for the jury."
Despite that earlier ruling, Harvey did not provide a factual conclusion or recite factors relevant to his self-defense analysis, such as whether it appeared from the video that Hains lunged at defendant in a threatening manner or reached for something with which to attack defendant, from which the jury could draw its own conclusion regarding defendant's self-defense argument. Rather, Harvey offered a mixed legal and factual conclusion that Hains's conduct did not appear to meet any of the statutory elements of a crime. In doing so, Harvey implicitly conveyed the understanding that, in his expert opinion, it was all but legally impossible that defendant acted in self-defense, because self-defense that includes deadly physical force is a valid defense only when a person encounters and responds to certain types of unlawful behavior. See ORS 161.219 (establishing that the use of deadly physical force may be justified only when a person reasonably believes he or she is defending themselves or another person against a "violent felony," "burglary," or other "unlawful deadly physical force").
There is no substantive difference between Harvey's testimony and testimony regarding whether, as in Olson , *490 the signs at a construction site satisfy relevant statutory requirements, or, as in Stokes , children are "present" as required by the relevant statute establishing negligence per se at the time of an accident. In those cases, as here, the expert impermissibly offered a legal opinion on whether certain statutory elements had been met under the circumstances. Accordingly, the trial court erred when it allowed Harvey to testify that he "saw no elements of a crime being committed [by Hains]."
Although the trial court erred, we do not presume that an evidentiary error was *975 prejudicial. OEC 103(1). Rather, defendant has the burden to demonstrate that the error affected a substantial right. State v. Hobbs , 218 Or. App. 298, 309, 179 P.3d 682, rev. den. , 345 Or. 175, 190 P.3d 1237 (2008). If there is little likelihood that the error affected the verdict, we will not reverse on the basis of that error. Id. (citing State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003) ).
In this case, defendant did not dispute that he shot Hains. Defendant's principal argument at trial was that he acted in self-defense. Specifically, defendant argued that he first shot Hains only after Hains, whom defendant believed was intoxicated and had violent tendencies, lunged at him, and again after Hains grabbed a two-by-four studded with nails, presumably with which to attack defendant. Defendant argued in closing, and the state did not object or dispute, that the defense of self-defense applied to all charges against him.[4]
To accept that theory, the jury had to find that defendant was justified in using deadly physical force against Hains. That ultimate finding required a predicate finding that defendant reasonably believed that Hains was acting unlawfully, whether by committing or attempting to *491 commit a violent felony or burglary, or by otherwise engaging in some unlawful use of physical force.[5] See ORS 161.219 (describing when a person is justified in using deadly physical force in self-defense).
If the jury credited Harvey's expert opinion and legal conclusion that Hains's conduct did not appear to meet any statutory elements of a crime, i.e. , that he was acting lawfully, then the jury was far more likely to reject defendant's self-defense argument. In fact, during jury instructions, the trial court told the jury that "there is no basis to justify a reasonable belief that it was necessary to use physical force" if defendant "was not subjected to unlawful physical force or was not threatened with imminent unlawful physical force." Considering that the state presented Harvey as an expert in use-of-force analysis with years of law enforcement experience, there was a significant risk that the jury would be likely to believe Harvey or find him credible on that point. See State v. Brown , 297 Or. 404, 439, 687 P.2d 751 (1984) (explaining that, when expert testimony is introduced on a subject, there can be a danger that the jury "may be overly impressed or prejudiced by a perhaps misplaced aura of reliability or validity of the evidence," thereby leading the jury to "abdicate its role of critical assessment"). Because there is a likelihood that Harvey's legal conclusion regarding the lawfulness of Hains's conduct affected the verdict, the trial court's error in admitting that testimony was not harmless.
Reversed and remanded.

Under ORS 161.015(3), deadly physical force means "physical force that under the circumstances in which it is used is readily capable of causing death or serious physical injury."

OEC 702 provides:
"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

Of course, opinion testimony is "not objectionable because it embraces an ultimate issue to be decided by the trier of fact." OEC 704. "[A]n expert may give an opinion on an ultimate issue to be decided by the trier of fact so long as that opinion pertains to an issue of fact and the opinion is otherwise admissible." Madrid v. Robinson , 324 Or. 561, 567, 931 P.2d 791 (1997) (emphasis added).

As summarized above, defendant was charged with two counts each of assault in the second degree, menacing, unlawful use of a firearm, and pointing a firearm at another. Self-defense is a valid statutory defense to each of those charges, all of which arose from defendant pointing the rifle at Hains, threatening to shoot Hains, and shooting Hains in response to defendant's fear that Hains was about to attack defendant. See State v. Strye , 273 Or. App. 365, 371, 356 P.3d 1165 (2015) ("[T]he defense of self-defense is available where an act is done with the knowledge or intent that it will thwart another's application of unlawful force." (Internal quotation marks omitted.) ).

The jury was instructed that defendant must have "reasonably believed" that Hains's conduct was criminal or unlawful for defendant to be justified in shooting Hains. The trial court instructed the jury regarding a defense of self-defense as follows:
"A person is justified using physical force on another person to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force.
"The burden of proof is on the state to prove beyond a reasonable doubt that the defense does not apply.
"There are certain limitations on the use of deadly physical force. The defendant is not justified in using deadly physical force on another person unless he reasonably believes that the other person was, (a) committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person, or (b) committing or attempting to commit a burglary in a dwelling, or (c) using or about to use unlawful deadly physical force against the defendant or another person."